{¶ 18} For the following reasons, I respectfully dissent from the majority's decision and would hereby vacate the trial court's grant of appellees' Motion to Dismiss and remand for further proceedings.
 {¶ 19} As stated by the majority, the instant matter stems from a lease agreement signed between the parties in 1996. Fairview Realty owns property located at 22301-220 37 Lorain Road in the City of Fairview Park. Fairview Realty and Seaair entered into a commercial lease agreement for said property, which was signed by both parties. Specifically, Linda Tancek and Fred Lemieux were the President and Vice President of Seaair. In signing the lease agreement, Tancek and Lemieux signed as President and Vice President, but also personally guaranteed the agreement by signing separately in their individual capacity. In doing so, Tancek and Lemieux became personally obligated to pay the rents due in the event that Seaair was unable to pay.
 {¶ 20} The parties operated under the lease agreement for the next five years without incident. In 2001, the parties entered into an Addendum to the Lease Agreement. The addendum to the original lease agreement extended the lease for an additional five years and increased the rent. Importantly, the addendum stated that the addendum was subject to the "same terms and conditions of the original lease except for arental increase." (Emphasis added). Both parties signed the addendum but, unlike the original lease agreement, Lemieux and Tancek signed only in their capacity as President and Vice President of Seaair.
 {¶ 21} Within a year of signing this addendum, and through a series of orchestrated moves, the appellees, in their individual capacities, bought the building across the street from their current location. They then moved their business to that location thereby breaking their lease with the appellant. Next, the appellees sold their business to another individual, thereby causing Seaair to no longer exist for all intents and purposes.
 {¶ 22} Understandably, Fairview Realty filed suit against Seaair and against Tancek and Lemieux, in their individual capacities, seeking the rent due under the lease agreement. The appellees filed their answer to the complaint and filed a motion to dismiss the claims against Lemieux and Tancek arguing that the addendum did not contain a personal guarantee signed in their individual capacities. Since there was no personal guarantee, Lemieux and Tancek argued that they were not personally liable for the rent.
 {¶ 23} Under the original lease agreement, the appellees personally guaranteed the lease. There is no ambiguity in this fact. In signing the lease addendum, the appellees signed only in their capacity as President and Vice President of Seaair; however, the lease addendum clearly states that the addendum was subject to the "same terms and conditions of the original lease except for the rental increase."
 {¶ 24} Accordingly, in giving this statement its plain and ordinary reading, it is clear that, except for the rental increase, all other terms and conditions of the original lease apply, including the personal guarantee. The majority relies on Singer v. Bergsman (Jan. 23, 1992), Cuyahoga App. No. 59682, in reaching its conclusion. In Singer, this court determined that "where a lease does not clearly and unambiguously express the intention of the parties that the guarantor of rent payments is liable for such payments beyond the original lease term of the lease, the guarantor's liability terminates at the expiration of the original lease."
 {¶ 25} I believe this case to be clearly distinguishable from Singer in that the lease in Singer called for an automatic extension at the termination of the lease if the parties did not notify the landlord/owner of their intent to vacate or hold-over. In Singer, the lessee did not notify the landlord/owner of their intention to vacate, therefore, the landlord/owner attempted to hold the lessee liable for rents due. This court determined that since the renewal was automatic, it would be inequitable to attempt to enforce the original lease terms beyond the expiration of the original lease term.
 {¶ 26} Unlike Singer, we do not have an automatic renewal or hold-over situation. In the case at hand, the appellees clearly expressed an intent to renew the lease as evidenced by the addendum to renew the lease for an additional five-years. Further, the addendum clearly states that all terms and conditions of the original lease apply except for the rental increase. Last, and unlike Singer, the parties to the addendum were the exact parties to the original lease terms.[19] Accordingly, I can only conclude that the appellees were well aware of all the terms and conditions inherent to the lease. As such, I would conclude that all terms of the original lease apply, including the personal guarantee.
 {¶ 27} Further, is worth noting that within one year of signing the lease addendum, the appellees breached their lease agreement with the appellant. I would conclude that the appellees acted in bad faith in renewing said lease since it is clear, as evidenced by the series of orchestrated moves, that the intent of the appellees was to vacate their original location, move the business to the newly acquired location, and then sell the business, thereby causing Seaair to no longer exist and arguably become uncollectible. The actions of the appellees were, in my opinion, made in bad faith.
 {¶ 28} Therefore, I respectfully dissent from the majority, as the facts in the case at hand are distinguishable from Singer, and I find no ambiguity with regard to the intention of the parties in signing the lease addendum. By the terms of the lease addendum the same terms and conditions of the original lease apply except for the rental increase. Accordingly, I respectfully dissent from the determination of the majority, and would hereby vacate the judgment of the trial court and remand for further proceedings.
KEYWORDS:
Guaranty, Motion To Dismiss, Contract
[19] In Singer, the lease went through a series of assignments during the original lease term.